*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
GASTON, HOUTZ, and MYERS
Appellate Military Judges

———————————————

**UNITED STATES**
*Appellee*

**v.**

**Dashawn Q. NICHOL**
Aviation Ordnanceman Third Class (E-4), U.S. Navy
*Appellant*

**No. 201800286R**

———————————————

Decided: 28 July 2022

Appeal from the United States Navy-Marine Corps Trial Judiciary
*upon further review*

Military Judges:
Robert P. Monahan (arraignment)
Michael D. Libretto (motions)
Derek D. Butler (motions and trial)
Donald R. Ostrom (sentence rehearing)

Sentence adjudged upon remand on 2 October 2020 by a general court-martial convened at Naval Station Norfolk, Virginia, consisting of a military judge sitting alone. Sentence approved by the convening authority

after sentence rehearing: reduction to E-1, confinement for 17 years,[1] and a dishonorable discharge.

For Appellant:
*Captain Jasper W. Casey, USMC*

For Appellee:
*Lieutenant Catherine M. Crochetiere, JAGC, USN*
*Lieutenant John L. Flynn IV, JAGC, USN*
*Major Kerry E. Friedewald, USMC*

————————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

————————————

PER CURIAM:

Appellant was convicted by officer and enlisted members, contrary to his pleas, of two specifications of rape and two specifications of sexual assault, in violation of Article 120, Uniform Code of Military Justice [UCMJ].[2] After the military judge conditionally dismissed one of the sexual assault convictions, Appellant was sentenced to reduction to E-1, confinement for 25 years, forfeiture of all pay and allowances, and a dishonorable discharge. In Appellant's first appeal, this Court approved the findings, set aside the sentence due to prosecutorial misconduct, and remanded for a sentence rehearing.[3]

Appellant was subsequently resentenced by a military judge to reduction to E-1, confinement for 17 years, and a dishonorable discharge. Pursuant to a post-trial sentencing agreement signed prior to Appellant's sentence rehearing, the convening authority approved the adjudged sentence but suspended confinement in excess of 15 years.

---

[1] The convening authority suspended confinement in excess of 15 years pursuant to a post-trial presentencing agreement.

[2] 10 U.S.C. § 920.

[3] *United States v. Nichol*, No. 201800286, 2020 CCA LEXIS 178 (N-M. Ct. Crim. App. May 28, 2020) (unpublished).

Appellant now asserts six assignments of error [AOEs] in his second appeal before this Court: (1) this Court erred when it determined that the Government presented legal and factually sufficient evidence for Specification 1 of the Charge (rape of Aviation Ordnanceman Airman [AOAN] Bravo[4]); (2) this Court erred when it determined that the Government presented legal and factually sufficient evidence for Specification 1 of the Additional Charge (rape of Ms. Romeo); (3) this Court erred when it determined that prosecutorial misconduct was not so prejudicial as to warrant setting aside the findings; (4) this Court erred when it failed to apply the proper standard in reviewing whether the military judge abused his discretion when he admitted alleged prior consistent statements of AOAN Bravo and Ms. Romeo; (5) the sentence awarded by the military judge is inappropriately severe; and (6) this Court should reconsider the fourth, fifth, sixth, and seventh AOEs in Appellant's initial brief of 9 April 2019.[5] We find no prejudicial error and affirm.

## I. BACKGROUND

As we discussed in our previous opinion, Appellant was convicted of raping AOAN Bravo, raping Ms. Romeo, and sexually assaulting Aviation Machinist's Mate Third Class [AD3] Baker. In May 2015, after going to an amusement park with AOAN Bravo, with whom he worked, Appellant brought her back to his apartment, where she became tired and wanted to go to sleep. After she accepted his offer to let her sleep in his bed, Appellant later entered the room, ripped the covers off of her, grabbed the phone from her hand as she was trying to call for help, pulled her shorts off, pried her legs open, and had sexual intercourse with her.

Appellant also worked with AD3 Baker, a friend of AOAN Bravo. In June 2015, he saw AD3 Baker at a party at another Sailor's home. He told her he had something to tell her and led her to a secluded area behind a stairwell away from others at the party. He then kissed her as she pushed him away and said, "No." He then grabbed and held her, put his hand down her pants, and inserted his fingers into her vagina several times.

---

[4] All names in this opinion, other than those of Appellee, the judges, and counsel, are pseudonyms.

[5] Appellant's fourth, fifth, and sixth AOEs are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We note that Appellant's first through fourth and sixth AOEs were already decided by this Court in our previous opinion. We apply the law-of-the-case doctrine and will not revisit these issues. *See United States v. Parker*, 62 M.J. 459, 464 (C.A.A.F. 2006); *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

Appellant knew Ms. Romeo, a 38-year-old civilian mother of four, from a chemistry class at a local community college. They became friends and occasionally socialized outside of class. In June 2017, Appellant and Ms. Romeo made plans to meet at his apartment and have drinks together. While they were having drinks, he showed her a video of his friends under the influence of Xanax. He then showed her a Xanax pill that he had taken from his friends. After Ms. Romeo poured herself a vodka and pineapple juice and went to the bathroom, she started feeling weird. After her second trip to the bathroom, Appellant pushed her into his bedroom, which she resisted and was able to return to the living room. The next thing she remembered was waking up the following morning nude on Appellant's living room couch. When she subsequently accused him of drugging her, he denied it and initially denied anything had happened between them. He later told her they had had sex.

## II. DISCUSSION

Appellant asserts his sentence is inappropriately severe. We review sentence appropriateness de novo.[6] "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves."[7] This requires an "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[8] We have significant discretion in determining sentence appropriateness, but may not engage in acts of clemency.[9]

In light of the serious and repeated nature of Appellant's misconduct, we find his sentence of 17 years' confinement (two of which were suspended), reduction to E-1, and a dishonorable discharge is just and that Appellant received the punishment he deserves. Appellant raped two women and sexually assaulted a third over the course of 25 months. His actions had a dramatic effect on the lives of his victims, who as a result of the assaults suffered deteriorated mental health, feelings of anxiety and isolation from family and friends, and recurring thoughts of self-harm.

---

[6] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[7] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[8] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

[9] *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

Appellant's sentence was also the predictable result of a post-trial sentencing agreement that he negotiated and voluntarily entered into with the convening authority prior to his sentence rehearing. The agreement provided that any punishment could be approved as adjudged and that any adjudged confinement in excess of 15 years would be suspended. The convening authority took action in conformity with this agreement. As we have previously stated, "we generally refrain from second guessing or comparing a sentence that flows from a lawful pretrial agreement . . . ."[10]

After reviewing the record as a whole, we find that the sentence is correct in law, appropriately reflects the matters in aggravation, extenuation, and mitigation presented, gives individualized consideration to Appellant and his crimes, and should be approved.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[11]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

S. TAYLOR JOHNSTON
Interim Clerk of Court

---

[10] *United States v. Widak*, No. 201500309, 2016 CCA LEXIS 172, *7 (N-M. Ct. Crim. App. Mar. 22, 2016) (unpublished); *see also United States v. Casuso*, No. 202000114, 2021 CCA LEXIS 328, *8 (N-M. Ct. Crim. App. June 30, 2021) (unpublished) (questioning an appellant's "claim of inappropriate severity when the sentence he received was within the range of punishment he was expressly willing to accept in exchange for his pleas of guilty").

[11] Articles 59 & 66, UCMJ.